UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. BARNETT,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:25-cv-01982-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REMANDED FOR FUTHER PROCEEDINGS<br><br>(ECF Nos. 1, 13).<br><br>FOURTEEN (14) DAY DEADLINE |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. *See* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(15) (referring final social security decisions for findings and recommendations).

Plaintiff argues the following:

1. The ALJ improperly rejected Medical Opinion Evidence and as a result, the ALJ's RFC finding is not supported by substantial evidence.
2. The ALJ improperly rejected Barnett's Testimony.

3. The ALJ's finding at step-five is not supported by substantial evidence.

(ECF No. 13-1 at 6[1]).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court recommends as follows.

## I. ANALYSIS

### a. Evaluation of the Medical Opinion Evidence of Dr. Seward, Dr. Kecskes, and Dr. Tan and resulting RFC Finding

Plaintiff first argues that the ALJ failed to assess the medical opinion evidence based on supportability and consistency with other evidence, and that the reasons given for rejecting the medical opinions were not supported by substantial evidence. (ECF No. 13-1 at 11). Defendant argues the ALJ properly considered the factors of supportability and consistency. (ECF No. 14 at 4).

Because Plaintiff applied for benefits in 2022, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17[2]). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b). "[T]he decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

> Under the substantial-evidence standard, we look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, —— U.S. ——, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (cleaned up) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a

[1] Page cites refer to the blue page numbers provided by CM/ECF.

[2] References to the Administrative record will reflect the bold page numbers in the bottom right corner.

> reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229, 59 S.Ct. 206).

*Id.* at 788.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

**i. Opinion of Dr. Seward**

Plaintiff argues the ALJ failed to explain how specific moderate limitations assessed by Dr. Seward were inconsistent with record. Moreover, the ALJ incorrectly determined that Dr. Seward's opinion related to moderate limitations was based only on the mental status exam. Yet, his opinion was additionally based on a clinical interview of claimant and his medical history. (ECF No. 13-1 at 13). Plaintiff also argues the ALJ did not explain why the moderate limitations of maintaining regular attendance, performing work activities on a consistent basis, and completing a normal workday or work week were not included in the RFC. With these limitations, Plaintiff may have a time off task of more than ten percent or more than one absent a month, which the vocational expert testified would be a preclusion to employment. (*Id.*).

Defendant generally contends that Dr. Seward's opined moderate limitations in maintaining regular attendance, performing work activities on a consistent basis, and completing a normal workday or work week were only partially supported by his own mental status exam of Plaintiff. (ECF No. 17 at 5-6).

In the analysis of Dr. Seward's opinion, the ALJ stated the following:

> In May 2022, the mental consultative examiner found that the claimant was moderately limited with maintaining regular attendance, ability to perform work activities on a consistent basis, ability to interact with coworkers and the public, deal with usual stresses in competitive work environment, and ability to complete a normal workday/week without interruptions from psych conditions (7F/5-6). The consultant assessed mild limitations in various other areas of mental function (7F/5-6). This opinion is partially persuasive, as the assessment of moderate limitations are only somewhat consistent with the underlying examination, which documented the claimant as fully oriented, friendly, and cooperative, with a congruent mood, good grooming, normal speech, good eye contact, adequate fund

> of knowledge, intact abstraction, adequate concentration with the ability to spell "world" forward and backward with no errors and ability to complete serial threes adequately, adequate memory with the ability to recall three out of three words after a brief delay, linear and logical thought process, unremarkable thought content, and intact calculation ability, judgment, and insight (7F/2; 7F/4). In addition, though the assessment of moderate limitations in areas of mental functioning is consistent with the overall evidence of record, the assessment of mild limitations is only partially consistent, which documents the claimant's need for mental health hospitalizations and crisis residential stays, as well as ongoing documentation with some mental status abnormalities at times even since his need for this higher level of treatment has ceased (2F; 19F/3; 21F; 23F/6). This evidence, taken as a whole, best shows that the claimant has moderate limitations in the paragraph B mental criteria, with the social and mental limitations detailed in the residual functional capacity above.

(A.R. at 28-29).

The Court agrees with Plaintiff and recommends finding that the ALJ's reasons for rejecting Dr. Seward's opined moderate limitations with maintaining regular attendance, ability to perform work activities on a consistent basis, ability to interact with coworkers and the public, deal with usual stresses in competitive work environment, and ability to complete a normal workday/week without interruptions from psych conditions are not supported by substantial evidence.

First of all, as Plaintiff points out, the ALJ's opinion states that "the assessment of moderate limitations in areas of mental functioning is consistent with the overall evidence of record . . . which documents the claimant's need for mental health hospitalizations and crisis residential stays, as well as ongoing documentation with some mental status abnormalities at times even since his need for this higher level of treatment has ceased." (A.R. at 28-29). This statement provides substantial evidence to incorporate Dr. Seward's moderate limitations rather than omit them from the RFC, as the ALJ did.

The Court next looks to whether the ALJ's other reasons provided substantial evidence to omit Dr. Seward's limitations from the RFC. As described above, the ALJ also stated that Dr. Seward's opined moderate limitations were "only somewhat consistent with the underlying examination, which documented the claimant as fully oriented, friendly, and cooperative, with a congruent mood, good grooming, normal speech, good eye contact, adequate fund of knowledge, intact abstraction, adequate concentration with the ability to spell 'world' forward and backward

with no errors and ability to complete serial threes adequately, adequate memory with the ability to recall three out of three words after a brief delay, linear and logical thought process, unremarkable thought content, and intact calculation ability, judgment, and insight." (A.R. 28-29). However, the results of the mental status examinations are not inconsistent with limitations regarding maintaining attendance, performing work on a consistent basis, and the ability to complete a normal workday or work week. Moreover, those limitations were consistent with other portions of Dr. Seward's report, including that "The claimant reports having a history of one suicide attempt in January 2022. The claimant reported 5 prior impatient psychiatric hospitalizations, with the most recent occurring in January 2022," (A.R. 1172), and that "claimant reported having limitations with daily living resulting from psychiatric, emotional, and/or cognitive issues." (A.R. 1173).

The Court has also reviewed the case cited in Plaintiff's reply brief, (ECF No. 20 at 2), Ortiz *v. Bisignano*, 179 F.4th 691, 701-702 (9th Cir.2026). In that case, the Ninth Circuit found that the ALJ erred in discounting certain medical evidence about the claimant's ability to be on time, sustain work, and maintain behavior. The *Ortiz* court explained that instances of normal functioning within the record are not inconsistent with a claimant's claims of difficulty functioning on a sustained basis because of a mental disorder. When discussing the claimant's bipolar disorder, the Court in the *Ortiz case* stated

> … the ALJ's conclusion is again premised on a "fundamental misunderstanding" of the nature of Ortiz's symptoms. *Revels*, 874 F.3d at 662; *see also Garrison*, 759 F.3d at 1017–18. Take, for instance, Ortiz's diagnosis of bipolar disorder, one of three bases of Dr. Wingate's opinion. The hallmark of bipolar disorder is that it is episodic—individuals suffering from the condition experience "recurring mood episodes," and "many individuals return to a fully functional level between episodes." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 143, 148 (5th ed. 2022). Properly understood, this condition is not inconsistent with Ortiz occasionally presenting with normal behavior and affect. The record citations are only snapshots of Ortiz, generally in the context of routine observations and outside of mental health treatment.

*Ortiz,* 179 F.4th at 702.

In this case, just as in *Ortiz,* the ALJ failed to demonstrate an actual inconsistency between normal findings such as speech, eye, contact, and the ability to think abstractly with

other areas of Plaintiff's limitations opined by Dr. Seward, such as the ability to maintain normal attendance, consistency, or to complete a normal workday. Further, Dr. Seward's opinion was supported by a clinical interview and a review of Plaintiff's medical history, including multiple psychiatric hospitalizations. (A.R. 1174).

Accordingly, the Court recommends finding that the ALJ's discounting of Dr. Seward's medical opinion and failure to incorporate moderate limitations opined by Dr. Seward into the RFC were not supported by substantial evidence.

**ii. Opinions of Dr. Kecskes and Dr. Tan**

Plaintiff next challenges the analysis of the opinions of Dr. Kecskes and Dr. Tan.

Dr. Kecskes completed a form entitled "Verification of Incapacity," on October 20, 2022, which opined that Mr. Barnett could not work at that time due to "depression and anxiety affecting concentration, mood, focus and ability to think clearly. John has suicidal thoughts and he has been hospitalized > 6 times this year." (A.R. 2736).

Dr. Tan similarly completed a form entitled "Verification of Incapacity" on August 27, 2024, which opined that Mr. Barnett could not work at that time due to "continued depression and anxiety, with experienced stressors reminiscent of previous traumatic incidents. Rehabilitation from alcohol use disorder. His mood continued to affect his ability to focus and complete tasks at home." (A.R. 2751).

The ALJ discussed these opinions as follows:

> The claimant's prior psychiatrist, Diane W. Kecskes, M.D., completed a form in November 2022 indicating that the claimant's mental symptoms affect his concentration, mood, focus, and ability to think clearly (22F/1). To the extent this is an opinion, it is not persuasive, as it is vague and does not detail the claimant's limitations in terms relevant to the disability analysis. In addition, it is not supported by this source's underlying treatment records which document that since maintaining sobriety and engaging in consistent mental health treatment, he has occasionally been documented with mental status examination abnormalities as detailed above, but has not required additional hospitalizations, and has typically been found alert and oriented, cooperative and calm, with fair hygiene, good eye contact, linear thought form, normal or clear and coherent speech, congruent affect, fair judgment, intact cognition, and denial of suicidal ideations, intentions, or plans (21F). These opinions are also not consistent with the overall evidence of record available at the hearing level, which documents that the claimant's mental status examinations on discharge from his inpatient and crisis residential stays showed him

> much improved, with some anxious mood and constricted affect at times, but appropriate grooming, spontaneous speech, cooperative attitude/behavior, full affect, normal speech, full orientation, perception/thought content within normal limits/no thought disturbance, denial of suicidal thoughts, intact/goal oriented thought process, good memory and concentration, intact cognition, and fair to good judgment and insight (2F/180; 6F/73; 12F/9; 13F/12; 13F/20; 18F/3-4). It is also not consistent with records documenting that since maintaining sobriety and engaging in consistent mental health treatment, he has occasionally been documented with mental status examination abnormalities as detailed above, but has not required additional hospitalizations, and has typically been found alert and oriented, cooperative and calm, with fair hygiene, good eye contact, linear thought form, normal or clear and coherent speech, congruent affect, fair judgment, intact cognition, and denial of suicidal ideations, intentions, or plans (19F/3; 21F; 23F/6).
>
> The claimant's current psychiatrist, Doris Tan, D.O., completed a form in September 2024, and noted the claimant's mood continues to affect his ability to focus and complete tasks at hand (24F/2). To the extent this is an opinion, it is not persuasive, as it is vague and does not detail the claimant's limitations in terms relevant to the disability analysis. In addition, it is not supported by this source's underlying treatment records which document that since maintaining sobriety and engaging in consistent mental health treatment, he has occasionally been documented with mental status examination abnormalities such as anxious and mildly depressed mood, but has not required additional hospitalizations, and has typically been found alert and oriented, cooperative, with fair hygiene, normal speech, neutral mood, congruent affect, fair judgment, intact cognition, and denial of suicidal ideations, intentions, or plans (19F/3; 21F; 23F). These opinions are also not consistent with the overall evidence of record available at the hearing level, which documents that the claimant's mental status examinations on discharge from his inpatient and crisis residential stays showed him much improved, with some anxious mood and constricted affect at times, but appropriate grooming, spontaneous speech, cooperative attitude/behavior, full affect, normal speech, full orientation, perception/thought content within normal limits/no thought disturbance, denial of suicidal thoughts, intact/goal oriented thought process, good memory and concentration, intact cognition, and fair to good judgment and insight (2F/180; 6F/73; 12F/9; 13F/12; 13F/20; 18F/3-4). It is also not consistent with records documenting no further inpatient hospitalizations or crisis residential stays since 2022.

(A.R. 30-31).

Plaintiff contends that the ALJ failed to present certain limitations opined by Dr. Kecskes and Dr. Tan to the vocational witness and merely rejected those limitations as vague and did not provide limitations relevant to a disability analysis. (ECF No. 13-1 at 14). Defendant argues the ALJ does not need to accept opinions that are vague nor opinions that do not specify limitations in a meaningful manner and because Drs. Kecskes and Tan's opinions provided no specificity, as such it was not err when ALJ discounted the opinions. (ECF No. 17 at 7-8).

The Court recommends finding that the ALJ's reasoning was sufficient as to these two opinions. The ALJ's opinion properly addressed the factors of supportability and consistency. Moreover, although the Court does not find all of ALJ's reasoning persuasive, it is nevertheless true that these brief forms did not provide sufficient specificity of work-related limitations to require incorporation into the RFC. *Threlkeld v. Comm'r of Soc. Sec.*, No. 2:23-CV-02199-CSK SS, 2025 WL 660547, at *7 (E.D. Cal. Feb. 28, 2025) ("the ALJ "does not need to accept an opinion that is vague and that does not specify limitations in a meaningful fashion."); *Beltran v. Comm'r of Soc. Sec.*, No. 1:25-CV-01081-GSA, 2026 WL 440600, at *4 (E.D. Cal. Feb. 17, 2026) (ALJ reasonably found opinion only partially persuasive as it was "vague and did not lend itself well to discerning what concrete *functional limitations* the RFC should have imposed.") (original emphasis).

**b. Plaintiff's testimony**

Plaintiff next argues that the ALJ improperly rejected his testimony. (ECF No. 13-1 at 22). Defendant argues the ALJ did not err when discounting Plaintiff's allegations of his disabling mental limitations during his subjective testimony. (ECF No. 17 at 12). In reply, Plaintiff reiterates his point, specifically stating that the ALJ improperly determined that his improvement following multiple psychiatric hospitalizations resulting from either suicide attempts or ideation, does not represent his ability to sustain work activity. (ECF No. 20 at 7).

> As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:
> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

After considering the parties' arguments and applicable legal standards, the Court will recommend finding that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony.

Regarding Plaintiff's subjective symptoms, the ALJ provided the following

> The claimant alleges disability due to depression and anxiety (1E/2). He has reported that he does nothing during the day, does not prepare his own meals, and does not socialize (1A/7). He testified at his June 25, 2024, hearing that his mental health medications make him sleepy. He stated that his physical condition is not 100 percent due to his history of back surgery (Hearing Testimony June 25, 2024). He noted he relapsed on alcohol for a couple of days over the prior holiday season (Hearing Testimony June 25, 2024). He also testified he gets anxious in traffic and would call in sick or miss work due to anxiety (Hearing Testimony June 25, 2024). He did not think he could perform even a simple job due to his side effects from medications, including feeling drowsy and loopy and being unable to concentrate (Hearing Testimony June 25, 2024).At his November 12, 2024, hearing, he testified that he continued to struggle with his mental health and continued to receive treatment including support groups and therapy.

(A.R. 24). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ concluded that Plaintiff's allegations were not entirely consistent with the medical evidence and other evidence in the record, and provided the following analysis:

> The claimant's symptoms from major depressive disorder, generalized anxiety disorder, and alcohol use disorder (now in remission) are documented in the record, and have been effectively managed with treatment since the amended alleged onset date, including emergency room treatment, inpatient hospitalizations, residential rehabilitation treatment, mental health medications, and therapy. The records document the claimant's report of multiple social stressors, including loss of his job, divorce, loss of his home, deaths in the family, and lack of family support, leading to alcohol abuse and severe depression during this time period. He was hospitalized as an inpatient approximately four times from his amended alleged onset date of October 18, 2021, through September 2022, generally with subsequent stays at crisis residential facilities (2F; 3F; 6F; 10F; 12F; 18F). He typically stabilized during this treatment and with medication compliance. For example, he was admitted as a psychiatric inpatient from January 11, 2022, through January 24, 2022, and over the course of the hospitalization, the claimant reported significantly improved mood, was more visible on the unit, and was interacting with the staff and other patients (18F; 18F/1). His mental status examination on discharge found him well groomed, with spontaneous speech, cooperative attitude/behavior, euthymic mood, full affect, full

orientation, perception/thought content within normal limits, denial of suicidal thoughts, goal-oriented thought process, fair judgment and insight, and with concentration/attention span, recent memory, and remote memory within normal limits (18F/3-4). He again required hospitalization in late March 2022, after resuming drinking, increased depression, and failure to fill his mental health prescriptions after his prior inpatient stay (5F; 6F/70-71). He remained an inpatient through April 13, 2022, and at discharge, his mental status examination noted good grooming and hygiene, no thought disturbance, normal speech, improved mood, denial of suicidal thoughts, good memory and concentration, and good judgment and insight (6F/73).

The claimant subsequently stayed in a Crisis Residential Treatment Center, and during his stay, presented for a mental consultative examination on May 5, 2022, at the request of the Agency (7F; 10F). At that examination, he was felt to have impaired attention due to his ability to recite only two digits in reverse, as well as a mildly anxious mood, but was fully oriented, friendly, and cooperative, with a congruent mood, good grooming, normal speech, good eye contact, adequate fund of knowledge, intact abstraction, adequate concentration with the ability to spell "world" forward and backward with no errors and ability to complete serial threes adequately, and adequate memory with the ability to recall three out of three words after a brief delay (7F/2; 7F/4). He had a linear and logical thought process, unremarkable thought content, and demonstrated intact calculations, judgment, and insight (7F/5). The examiner found diagnoses of major depressive disorder, recurrent, unspecified; alcohol dependence, in early remission; and opioid dependence in remission (7F/5). At the time of his discharge from Crisis Residential on May 13, 2022, he was adequately groomed and cooperative, with normoproductive and spontaneous speech, "better" mood with congruent affect, intact thought process, fair insight and judgment, intact cognition and sensorium, and denial of suicidal ideation (13F/12).

The claimant again required inpatient hospitalization in late August through September 6, 2022, after being off of his mental health medications a month, having increased depression with suicidal thoughts, and drinking a 12 pack of beer daily (12F; 12F/8; 17F). His condition improved and at discharge, his affect was appropriate; sleep, appetite, speech, and thought process were normal; appearance was appropriate; behavior was cooperative; there was no sign of memory deficit; insight was normal; and judgment was fair (12F/9). He then remained in Crisis Residential Treatment until October 6, 2022, before being discharged to a room and board program with Fresno IMPACT, with his discharge examination noting he was adequately groomed and cooperative, with normoproductive and spontaneous speech, "better" mood with congruent affect, intact thought process, fair insight and judgment, intact cognition and sensorium, and denial of suicidal ideation (13F/20; 13F/45).

The evidence documents that the claimant has remained consistent with medication compliance, participation in behavioral health services, and maintaining his sobriety (aside from one brief relapse) since October 2022 (19F; 21F; 23F; Hearing Testimony June 25, 2024). He has been documented with some mental status abnormalities at times, such as anxious and/or depressed mood, some circumstantial thought form, and/or restricted affect; however, he has more typically been found to be alert and oriented,

> cooperative, and calm, with fair hygiene, good eye contact, linear thought form, normal or clear and coherent speech, congruent affect, fair judgment, intact cognition, and denial of suicidal ideations, intentions, or plans (19F/3; 21F; 23F/6).

(A.R. at 25-26).

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony. Plaintiff argues that improvement following hospitalization discharge is not a restoration of the ability to return to work. (ECF No. 20 at 7). Especially, when—as Plaintiff states—these hospitalizations were typically the result of a suicide attempt or suicidal ideation. (*Id.*). Plaintiff also argues that the ALJ's reliance on the medical evidence was error because the ALJ failed to identify any findings which were inconsistent with any of the specific symptoms alleged by Plaintiff. (ECF No. 13-1 at 20).

The Court agrees with Plaintiff. The ALJ failed to identify any specific medical record that was inconsistent with any part of Plaintiff's testimony. Moreover, the ALJ recounted many facts consistent with that testimony, including multiple hospitalizations, stays in crises centers, and mental status abnormalities. The Court agrees with Plaintiff that noting improvement after extended stays in mental crisis centers does not discredit Plaintiff's testimony regarding his difficulties and work limitations overall.

Accordingly, the Court recommends finding that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

**c. Remedy**

Plaintiff contends that the Court should remand this case to the Agency for the payment of Benefits as all of the "relevant evidence is already in the record," and the "ALJ would be required to find Plaintiff disabled." (ECF No. 13-1 at 24). Defendant argues that, if this Court does not affirm, remanding for further proceedings is the appropriate remedy. (ECF No. 17 at 14). Plaintiff's reply repeats his argument from his initial motion. (ECF No. 20 at 8).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test,

with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

The Court recommends a remand for further proceedings. While Plaintiff argues the vocational expert opined that an individual who was off task for more than ten percent of the workday or absent more than one day each week would not be able to sustain competitive employment, the Court finds that the testimony was not sufficiently on point to remand for award of benefits.

During the hearing, the ALJ sought jobs within the market that would support a medium level of exertion, amongst other limitations. (A.R. 58). The vocational expert provided certain jobs that were within those specific parameters. The ALJ then introduced an additional limitation into the hypothetical, asking the vocational expert *if any of the previously mentioned jobs* would be available if a claimant was off time for twenty percent or more? (A.R. 60) (emphasis added). The vocational expert opined, "No, your honor. From my experience an employee would tolerate up to 10%, so that would exceed the tolerance." (A.R. 61). The ALJ then inquired about the tolerance for absenteeism, to which the expert stated a tolerance of one absence per month. (*Id.*). However, because the question concerned only work involving a medium level of exertions, it is likely but not entirely clear from this testimony if the additional limitations would preclude all available work.

Remand would thus result in more accurate proceedings in which an RFC that

incorporated Dr. Seward's opined limitations and Plaintiff's subjective symptom testimony could be used to pose specific hypotheticals to a vocational expert.

## II. CONCLUSION AND RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS RECOMMENDED that:

1. The decision of the Commissioner of the Social Security Administration be reversed, in part. Specifically, this matter be remanded so the ALJ may: (1) incorporate Dr. Seward's moderate limitations and Plaintiff's subjective symptom testimony into the RFC and correct the step-five finding as applicable
2. The Clerk of Court be directed to enter judgment in favor of Plaintiff and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 1, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE